## THOMAS A. KIRK v. JOHN G. GOODWIN et al.

MECHANIC'S LIEN — *Foreclosure — Subsequent Personal Judgment — Res Judicata.* Where a contractor enters into an agreement with the equitable owner of certain lots to furnish material and labor for the improvement of the same, and subsequently files a mechanic's lien upon the lots, alleging therein that he has furnished the material and performed the labor in accordance with his contract with the equitable owner, and that the person contracted with is the owner of the lots, and afterwards, in an action brought by the contractor against such equitable owner, to recover a personal judgment against him for the material and labor furnished, and to foreclose his mechanic's lien upon the lots, the party who has the legal title is also made a defendant in that action, and such contractor obtains a personal judgment against the equitable owner for the full amount of his claim for material and labor and a foreclosure of his mechanic's lien, with a decree barring therein all the title and interest of the defendant holding the legal title, and thereafter collects a part of the judgment from the proceeds of the sale of the lots, and then subsequently brings his action to recover a personal judgment against the party who had the legal title at the date of the former judgment, upon the ground that such party agreed to become responsible and pay the contractor for his work, if he would finish the same, such contractor is not entitled to recover a new or further judgment against the party who held, formerly, the legal title and was one of the defendants in the prior action.

*Error from Wyandotte District Court.*

PRIOR to June 12, 1887, John G. Goodwin was the owner of the site of Malvern Hill, Wyandotte county, in this state, subject to a mortgage in favor of John W. Green, from whom he had purchased the property. Goodwin and his associates

laid out the tract of land into lots, streets, and alleys, and called the same "Malvern Hill." Lee Settle, on the 12th of June, 1887, entered into an agreement with John G. Goodwin to purchase lots 43, 44, and 45, in Malvern Hill, for $3,275. Settle was to pay for the lots $2,175 in 60 days, and within the same time to construct on the lots five frame dwelling houses, of six rooms, two stories high, with the necessary out-buildings, costing $1,000 each, all to be completed within 60 days. Settle agreed to furnish Goodwin receipted vouchers for all bills for material and labor incurred in building the houses, and also agreed to protect the property from all liens which might arise by his making the improvements. Settle expected to obtain a loan upon the lots with which to aid him in paying for the same and the improvements. Goodwin was to make a warranty deed to Settle as soon as $2,175 were paid, and he was to take a second mortgage on the lots for the balance of the purchase money.

Soon after the execution of this contract, Settle contracted with Thomas A. Kirk and others for building material and labor for the erection of the houses. Settle failed to obtain any loan with which to pay the $2,175 on the lots, and for the material and work for his improvements. The plaintiff and others thereupon filed mechanics' liens upon the premises, alleging that on the last day of August, 1887, they entered into contracts with Lee Settle to furnish material and perform the labor therein described. The statements in the liens, as filed and sworn to, also show that Lee Settle was the owner of the lots described. Afterward, the Missouri Valley Lumber Company brought its action in the district court of Wyandotte county against Lee Settle, John W. Green, John G. Goodwin, Thomas A. Kirk, and others, to recover for material furnished Lee Settle in improving the lots referred to, and to foreclose its mechanic's lien thereon.

Thomas A. Kirk and others, who had furnished material and labor to improve the lots, filed their answers and cross petitions, alleging their several claims, and praying for per-

sonal judgments against Lee Settle, and a foreclosure of the liens which they had filed upon the lots. In that action, on the 5th day of October, 1888, Kirk and the other parties, who had assigned their claims to him, and which were sued on in this action, obtained personal judgments for the full amount of their claims against Settle, and also a decree of the court foreclosing their mechanics' liens upon the lots, and in the decree both Lee Settle and John G. Goodwin were forever barred and foreclosed from any right, title or interest in the lots, or any part thereof, from and after the sale.

On account of the prior liens, which, after paying the costs, nearly exhausted the proceeds derived from the sale of the premises, Kirk and the parties who had assigned their claims to him failed to realize sufficient moneys to pay themselves in full. Kirk collected on his judgment against Settle and the foreclosure of his lien, before he commenced this action, $199.21; A. P. Wasson collected, after his judgment against Settle and the foreclosure of his lien, $5.03; Cole & Scholl collected upon their judgment $57.87; and R. Davis collected on his judgment $20.18. Thereafter, and on the 23d of February, 1889, Thomas A. Kirk commenced his action against John G. Goodwin and others, to recover for the balances due upon the identical claims for material and labor held by him and others against Lee Settle, and upon which judgments were rendered in their favor against Settle on the 5th day of October, 1888. Kirk claimed upon the trial that, while he was making the improvements upon the lots purchased by Settle from Goodwin, Goodwin told him, and sent word to all the other men then engaged on the improvement of the lots, to go ahead and finish the work on the two houses of the five, and the foundation of a third, then begun, and when they were completed he would pay all the bills.

After all the evidence, including the former judgments rendered against Lee Settle upon the same claims, was introduced, the trial court instructed the jury to render a verdict

for the defendants.   Such a verdict was returned, and subsequently judgment was rendered thereon.   Kirk excepted, and brings the case here.

*J. M. Mason,* for plaintiff in error.

*E. G. Taylor,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: It appears from the record that Thomas A. Kirk and the various parties who have assigned to him their claims for material and labor had the opportunity, if they had any valid claims against John G. Goodwin, to recover personal judgments against him in the action brought by the Missouri Valley Lumber Company against Lee Settle, John G. Goodwin, and others.   They all filed answers and cross petitions in that case and recovered personal judgments against Lee Settle for all their claims, and also obtained a decree of foreclosure of their liens upon the premises purchased by Settle from Goodwin.   That decree also barred Goodwin of all his rights in the premises.   Under the facts disclosed, in connection with the former judgment, the trial court properly instructed the jury to return a verdict for Goodwin.

On the part of the plaintiff, we are referred by counsel to *Bice v. Opera House Co.*, 96 Mich. 24.   But in that case the contract between the contractors and the owner of the building provided that, in case the contractors neglected to supply the material for the opera house, the owner of the building had permission to do so, and deduct the costs of the same from any moneys due or to become due the contractors.   In this case, Lee Settle was the equitable owner of the lots when he made his agreements with Kirk and others, and was indebted to Goodwin on his contract of purchase.   Goodwin was not indebted to Lee Settle, and had no agreement with him to pay for materials or labor for the improvement of the lots.   On the other hand, there was an express contract between Settle and Goodwin that the former would "furnish to

Goodwin receipted vouchers for all bills contracted for the material, labor and expenses of every kind incurred in making, the improvements." In the Bice case, in the prior judgment rendered against the contractors, the opera house company was not a party, and the subsequent proceeding to obtain a lien upon the opera house had not resulted in a judgment against the company. The court therefore held, upon the facts disclosed, that the judgment against the contractors would not release the opera house company, unless there was a satisfaction of the same. Again, after Kirk and his assignors recovered their personal judgments against Settle, and obtained a decree of foreclosure of their liens, they collected various amounts upon their judgments. Their contracts with Settle were single and indivisible. (See *Madden v. Smith,* 28 Kas. 798.)

The judgment of the district court will be affirmed.

All the Justices concurring.