## Rarey *v.* Lee.

[No. 1,850. Filed June 9, 1896. Rehearing denied Sept. 30, 1896.]

DAMAGES.— *Diverting Water From Its Natural Course.*— It is an actionable wrong for one landowner to divert the natural course of water that falls upon his lands, and cast it upon the lands of others to their injury.

SPECIAL VERDICT.—A special verdict must find every fact essential to support a recovery for the plaintiff before a judgment can be rendered in his favor.

DAMAGES.—*Diverting Water From Its Natural Course.— Special Verdict.*—In an action for damages for unlawfully flowing water on plaintiff's lands, a special verdict which finds that the flow of water was principally due to the natural lay of the land, but that "some water" which would not naturally have flown upon plaintiff's land, was turned upon it by a ditch constructed by defendant, is not sufficient to support a judgment for any amount in the absence of a finding that an appreciable amount of the damage was due to the water which came through the ditch.

From the Howard Circuit Court. *Reversed.*

*Conrad Wolf*, for appellant.

*J. C. Blacklidge, C. C. Shirley, Milton Bell, W. C. Purdum* and *B. C. Moon*, for appellee.

LOTZ, J.—The appellee was the plaintiff, and the appellant the defendant in the court below. The following facts appear from the special verdict.

In 1887 the plaintiff and defendant were the owners of adjoining lands. On the defendant's land there was a ridge or natural water-shed extending in a general northeasterly and southwesterly direction. All the water falling on the lands naturally flowed to the east and south; and to the north and west. The waters falling on the lands east and south of the ridge flowed away from the plaintiff's lands and no part thereof came upon the same. The defendant cut two ditches across this ridge and caused a part of the water which naturally flowed to the south and east to flow to the north and west upon the plaintiff's land. The plaintiff instituted a suit in the Howard Circuit Court to enjoin the defendant from flowing such water upon his lands and for damages; and such proceedings were had therein, that it was adjudged and decreed that the defendant be perpetually enjoined from flowing such water upon the plaintiff's land.

In 1891 the plaintiff commenced another action in the same court to recover damages of the defendant for a violation of the injunction, and such proceedings were had therein that the plaintiff recovered a judgment against the defendant for damages. See *Rarey* v. *Lee,* 7 Ind. App. 518.

After the rendition of the first judgment the defendant cut off one of the ditches across the ridge so that no water ever thereafter flowed through it. And after the trial of the second case, and before the judgment was rendered therein the defendant placed a dam across the other ditch. And in a few months thereafter placed two other dams across said ditch. On the plaintiff's land there was a depression or pond, the lowest part containing about four acres. This

pond was the bottom or lowest part of a basin containing about twenty or twenty-five acres. The outer edge of the basin was about eight feet higher than the bottom. The water falling on defendant's land west and north of the ridge, and upon other lands near by naturally flowed into the basin. There were three other ponds, two upon defendant's land, and one upon adjoining lands, the waters of which naturally flowed into the basin through ditches. And the water from a large tract of adjoining lands naturally flowed into said basin. Extending westward there was a public ditch which drained the basin. The verdict further states that during unusual rainfall the water which flows naturally into the basin runs rapidly to the bottom and overflows the same. At other times the basin was not overflowed. During the years of 1892 and 1893 the plaintiff had crops planted in the depression or basin. These crops were damaged to the extent of $100 by the overflowing water. It is further found "that since the construction of the first of the dams above described, some water had been flowed from defendant's land lying east of said elevation and ridge besides what would naturally flow over the surface of the earth at the time of unusual rain and freshets. * * * We further find that damages to plaintiff's crops and land was caused by an overflow of water that naturally flows and has its outlet on the lands of the plaintiff; which overflow of water was occasioned by unusual rainfalls that occurred during these years and the water which flowed through the three dams."

The court overruled the defendant's motion and sustained the plaintiff's motion for judgment on the verdict, and rendered judgment for the plaintiff in the sum of $100. These rulings are the only errors assigned in this court.

It is an actionable wrong for one landowner to di-

vert the natural course of water that falls upon his lands and cast it upon the lands of others to their injury. Such is the cause of action alleged and sought to be established in this case.

The rights of the parties with reference to flowing the water were established by the former adjudications. This action is for a positive, aggressive wrong; the violation of the order of the court, and not for mere passive negligence. The injury to the appellee's crops was occasioned by water arising from two sources; that which passed through the ditch across the ridge, and that which fell on the west side of the ridge. Whatever damage was done by the water which flowed across the ridge, the appellant must answer for, but he is not responsible for the damage caused by the water which naturally flowed into the basin on the west side of the ridge. The finding is that "some water" flowed over the ridge. The word "some" is here used to define the quantity of water; and as applied to quantity it is a very indefinite term. It is true it means an appreciable amount, but that amount may be a pint or a million gallons. Conceding that the "some water" might have contributed to the injury, still the finding is that there was another proximate cause which was capable of producing the whole injury,—the water which fell upon the west side of the ridge. The appellant is not responsible for this cause. This is not like a case where one person sets in operation a dangerous force, nor is it like a case where the negligence or wrong of two or more concur in producing an injury. One of the causes was not of human agency, and no one is responsible for the injury caused by it. While the two causes may each have contributed to the injury the appellant should not be held responsible for the

whole. What he did was not a public nuisance. *City of Valparaiso* v. *Moffitt*, 12 Ind. App. 250.

The verdict does not separate the damages which were caused by the two separate causes. Nor is there any means by which the damages caused by each can be ascertained.

The appellee insists that if the verdict is sufficient to support a judgment for any amount that the motion for a judgment in his favor was correctly sustained. That if there was any error in the amount that could only be reached by a motion for a new trial or to modify, and that as no error is assigned on either of these motions the presumption is that the court properly instructed the jury as to the measure of damages, and that there was evidence from which the jury might have fixed the damages caused by the appellant's wrong in the sum of $100.

But there is another rule that must be borne in mind. A special verdict or finding must find every fact essential to support a recovery for the plaintiff before a judgment can be rendered in his favor. And such facts must not be left to inference or doubt. In the verdict before us we have a finding that there was one cause for which no one was responsible, sufficient to have produced the whole injury, and there is no finding that the cause for which the appellant was responsible caused any specific or appreciable part of the injury. Under the rule the verdict is insufficient to support a judgment for any amount against the appellant. The amount of damages caused by the appellant's wrong is conjectural.

The appellee further contends that as the wrongful character of the appellant's act had been judicially determined, and that as this action is based upon the violation of a positive order of the court, the jury had the right to award exemplary damages to compel the

appellant to abate the nuisance. It is apparent, however, that the verdict did not include anything as exemplary damages. The damages are fixed in exactly the same amount as that done to the crops.

The water that naturally flowed into the basin came from a large tract of adjoining lands. The water that flowed over the dams in comparison was small. If any substantial damage were caused by the waters that overflowed the ridge the appellant should be required to answer therefor. But there must be a finding of substantial damages. "*De minimis non curat lex.*" The law does not regard trifles. If but a pint of water overflowed the dams and commingled with the waters which naturally flowed into the basin and contributed its insignificant part to the injury, this would be so trifling that the law would take no notice of it.

It appears that the water west of the ridge was sufficient to produce the whole injury, and it does not affirmatively appear that the "some water" produced any substantial part of the injury. In the absence of such finding the verdict is insufficient to support the judgment.

Judgment reversed with instructions to sustain the appellant's motion for judgment on the verdict.