FAIRWOOD BLUFFS CONSERVANCY DISTRICT ET AL.
*v.* IMEL ET UX.

[No. 1267A117. Filed March 3, 1970.]

*Paul W. Kelly, Kelly, Arnold & Kelly,* Anderson, for appellant.

*Robert L. Austin, Busby, Austin, Cooper & Farr,* Anderson, for appellees.

## STATEMENT OF FACTS

SULLIVAN, J.—On April 22, 1963, plaintiffs, Lee B. Imel and Audra O. Imel, filed this suit against the defendants, Fairwood Bluffs Conservancy District, and Ray Wood, Wahn Dean

and Samuel Hiles to: (1) rescind and cancel an easement, (2) abate a nuisance, and (3) recover damages arising out of the surface water and sanitary drain which ran across the Imels' real estate. Trial to the court resulted in a finding that the nuisance could not be abated. A judgment for damages was awarded in favor of the Imels in the sum of Thirty-Five Thousand Dollars.

The Imels are residents of Madison County, Indiana, and own nine acres of real estate in said County, bounded on the south by White River. Situated upon the real estate are the Imels' dwelling house, another dwelling house and a barn. The defendant, Fairwood Bluffs Conservancy District, was organized under the Acts of the Indiana General Assembly of 1947, ch. 239, as amended.

On April 14, 1953, the Imels entered into a written right-of-way easement, the terms of which granted the Conservancy District an easement across the previously mentioned real estate, for the purpose of constructing and maintaining thereon an enclosed sanitary sewer consisting of a 12 inch tile, together with an open storm water overflow, which consisted of an open ditch generally following the course of an old canal across the Imels' real estate to White River. At the time such easement was granted to the Conservancy District, the Imels were told that the excess storm water drain would never carry a large volume of water, would not damage their real estate, and would never carry any raw sewage or waste. The Conservancy District then consisted of an area of approximately 615 acres, which was divided into approximately 1400 lots and the area was less than 50% improved.

After the completion of the sanitary sewer and storm water overflow in 1954, there was much additional building and construction within the Conservancy District. By the year 1959, such volumes of water were being discharged into and upon the open storm water drain that trees growing nearby were damaged, banks were washed out and eroded, and pools

were formed alongside the open storm water drain. Raw sewage as well as other domestic waste matter which emitted noxious and offensive odors were being deposited upon the real estate of the Imels. The Imels were thus compelled to keep all windows and doors closed in their home and were finally forced to leave their place of residence.

On November 30, 1960, a suit (which the Conservancy District asserts acts as a bar to the instant suit) was filed in the Superior Court of Madison County. The plaintiffs in the 1960 suit were Lee B. Imel and Audra O. Imel, appellees here. The defendants were Fairwood Bluffs Conservancy District, Ray Wood, Wahn Dean and Samuel Hiles, as Directors of Fairwood Bluffs Conservancy District, and Martin Milling, Individually and as Agent and Engineer for Fairwood Bluffs Conservancy District. The 1960 suit was predicated upon fraud and misrepresentation on the part of the defendants in obtaining the easement in question and sought (1) to rescind and cancel the easement, (2) to recover compensatory damages, and (3) to recover punitive damages. On March 20, 1963, Special Findings of Fact and Conclusions of Law were entered by the Court stating that the evidence did not prove fraud on the part of defendants and that the plaintiffs were not entitled to relief upon the theory set forth in their complaint.

Thereafter, on April 22, 1963, the instant suit was filed. In October of 1963, the defendants filed "A Plea In Bar—Former Adjudication" asserting:

"(1) That on the 30th day of November, 1960, plaintiffs brought their action in Superior Court #2 in Madison County, Indiana, being cause #2S60/632 against the defendants on the identical cause of action set forth in the complaint herein, or could have been adjudicated in the former action.

"(2) That such proceedings were had in said cause. That on the 20th day of March, 1963, judgment was rendered by said court on all the merits of said cause against the plaintiffs and said defendant for costs."

On March 4, 1964, the plaintiffs filed a memorandum addressed to the defendants' assertion of "former adjudication." Copies of the complaint and of the Special Findings of Fact and Conclusions of Law from the 1960 suit were included in the memorandum. On the same day, March 4, 1964, the court made the following Order Book entry:

"And comes now the Court and sustains defendants' plea in bar.

"IT IS, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that the plaintiffs be and they are hereby ordered to pay the costs of this action herein laid out and expended, taxed at $_____.

"ALL OF WHICH IS FULLY AND FINALLY ADJUDGED AND DECREED BY THE COURT."

On April 9, 1964, the court, apparently upon its own motion, modified the March 4, 1964, entry as follows:

"Comes now the Court and the record of March 4, 1964, is modified in that the plaintiffs are ordered to amend their complaint on the theory of nuisance and to strike out all other allegations sounding in recission and cancellations."

Thereafter, the plaintiffs filed an amended complaint and the defendants filed a Motion for Change of Judge, an Answer in three paragraphs and a Motion for Change of Venue from Madison County. The cause was venued to the Henry Circuit Court and tried upon the issues joined by plaintiffs' amended complaint and the defendants' answer thereto.

The Henry Circuit Court made the following conclusions of law:

"1. The law is with the plaintiffs.

"2. The acts of defendant Fairwood Bluffs Conservancy District constitute a nuisance.

"3. The nuisance cannot be abated, and the plaintiffs are entitled to recover as damages the amount of the loss of the fair market value of plaintiffs' real estate caused by the acts of the defendant Fairwood Bluffs Conservancy District creating such nuisance, and that the loss of fair market value of plaintiffs' real estate caused thereby is $35,000.00.

"4. That the judgment entered in the Superior Court of Madison County #2 by the Honorable George B. Davis, as Special Judge, in a cause entitled Lee B. Imel and Audra O. Imel vs. Fairwood Bluffs Conservancy District, Ray Wood, Wahn Dean and Samuel Hiles, as Directors of Fairwood Bluffs Conservancy District; and Martin Milling, individually and as agent and engineer for Fairwood Bluffs Conservancy District, is not a prior adjudication of the same cause of action, and does not constitute a bar against plaintiffs maintaining this cause of action, and is not a defense to this cause of action.

"5. That the entry of the Superior Court of Madison County in this cause of action on March 4, 1964, does not constitute a prior adjudication of this cause against the plaintiffs.

"6. That the plaintiffs should have judgment against the defendant Fairwood Bluffs Conservancy District in the sum of $35,000.00 and costs of this action."

Appellant, Conservancy District, argues here that the judgment of the Henry Circuit Court should be reversed because: (1) the doctrine of *res judicata* precludes the 1963 action, (2) the entry of the Superior Court of Madison County on March 4, 1964, constitutes a "prior adjudication" of the cause against plaintiffs, (3) the Conservancy District is immune from tort liability under the doctrine of sovereign immunity.

APPELLEES' MOTION TO DISMISS OR AFFIRM
ALLEGING NONCOMPLIANCE BY APPELLANTS WITH
INDIANA SUPREME COURT RULE 2-17 IS OVERRULED

On September 16, 1968, this Court entered an order whereby appellees' motion to dismiss or in the alternative to affirm was held in abeyance pending oral argument and consideration of the cause upon its merits. Said motion by appellees alleges that appellants' brief indicates the lack of a good faith effort to substantially comply with Supreme Court Rule 2-17. Appellees first contend that appellants' brief does not set forth appellees' complaint, appellants' answer or the substance thereof. Under the most broad and liberal construction of

Rule 2-17, we might hold that appellants' paraphrasing of its answer meets the minimum requirements of said rule. However, appellants' purported paraphrasing of appellees' amended complaint can by no stretch of the imagination be deemed a good faith or substantial compliance with the rule. Appellees' actual amended complaint in this cause as set forth verbatim in appellees' answer brief, contains factual allegations which give the required shape and dimension to the broadly stated nuisance theory of said complaint.

Since one of appellants' substantive arguments is that the 1960 action by appellees premised upon fraud and misrepresentation is *res judicata*, it is essential that the amended complaint in the instant suit, as well as said earlier complaint, be before us at least in substance. In no other way is it possible to adequately and properly determine whether, as argued by appellants, the present cause for abatement of a nuisance was or could have been adjudicated in the prior action.

Appellees, in their brief, have set forth the instant complaint verbatim and appellants' brief contains the complaint in the 1960 action.

By reason of the well-established principle that we will, whenever possible, dispose of appeals upon their merits we will not further discuss appellees' contentions concerning the failure of appellants' brief to include the appellees' complaint in this cause. The deficiency alleged by appellees to exist in appellants' brief is provided by appellees' brief itself.[1] Further, under the new rules of proced-

---

1. Rule 2-17 sets forth certain requirements for appellant's briefs. Failure to comply has traditionally been thought to be grounds for affirmance of the decision below. The summary statement of the record made by appellant, though defective, and in violation of 2-17 shall be taken to be accurate and sufficient pursuant to Rule 2-17 (f), unless appellee makes appropriate "corrections or additions." These two provisions were interpreted in *West* v. *Indiana Insurance Co.* (1969), 253 Ind. 1, 247 N. E. 2d 90, 93, in the following manner:

"* * * Thus, a dismissal would be entirely improper where the appellant has made a good faith attempt to comply with this rule and

ure, such technical niceties will not present the problem, or work the inequity, that strict application of the old rules has sometimes done.

Appellate Rule 8.3(A) of the new Indiana Rules of Civil Procedure which supplants Rule 2-17 dispenses with this problem in that it merely requires:

> "(4) A statement of the case. The statement shall first indicate briefly the nature of the case, the course of proceedings, and its disposition in the court below, including a verbatim statement of the judgment.
>
> "(5) A statement of the facts relevant to the issues presented for review with appropriate references to the record."

Appellees' next contention is that neither appellants' motion for new trial nor its substance is contained in the summary of the record. This contention is entirely correct. However,

---

the appellee had not made substantial corrections or additions in his own brief."

3 Wiltrout, Indiana Practice § 2680 cautions practitioners not to be too generous in supplying omissions, stating that if said appellee sets out substantive matter thereby providing the omitted material rather than merely to point out that such matter is essential to appellant's brief and citing transcript page and lines *at* which such omitted matter may be found, the omission is deemed cured. The appellate tribunal may and should then consider the cause on the merits. Wiltrout's treatment cites cases for this proposition, which with one exception, arose prior to adoption of Rule 2-17 in 1940.

Yet, as stated in *Niemeyer* v. *Lee* (1969), 144 Ind. App. 161, 245 N. E. 2d 178, 181.

"\* \* \* Rule 2-17(f), however, casts some doubt on our power to question the sufficiency of the appellant's summary statement of the record when the appellee has not cured deficiencies by making necessary additions in his brief. \* \* \*"

The not unsurprising anomaly is thereby presented whereby an appellee may not successfully move for affirmance of an appeal upon grounds that appellant's brief fails to comply with Rule 2-17 unless appellee himself supplies those matters by way of additions or corrections pursuant to Rule 2-17(f). If, however, appellee does include such matter in conformity with Rule 2-17(f) and earlier cases are followed, the defect in appellant's brief is deemed cured.

The suggestion contained in Wiltrout's work is practical in view of the absurd dichotomy hereinabove treated. Such caution on the part of practitioners should be unnecessary, however, in the future in light of the new rules of civil procedure.

once again, straining Rule 2-17, we find in its "Brief Summary of the Argument" the following:

"General summary of appellants' argument is based upon the issues raised by the three paragraphs of answer to appellees' complaint together with the Court's overruling appellants' amended motion for new trial based upon the grounds:

"1. That the decision is not sustained by sufficient evidence.

"2. That the decision is contrary to law."

We held such to be an adequate statement.

Appellees also contend that the assignment of errors is not contained in the summary of record nor elsewhere in appellants' brief. In appellants' summary of record the following appears:

"The assignment of errors of the lower court consists chiefly in the trial court's overruling appellants' amended motion for new trial."

Once again we deem this adequate, though barely so, to preserve appellants' appeal.

Appellees further contend fatal non-compliance with Rule 2-17 in that appellants' brief does not contain as required by said rule, "[T]he judgment, decree or order from which the appeal is taken, giving the transcript page." We note the following language under Part 3, *How The Issues Were Decided And What The Judgment Was,* of appellants' brief:

"Trial was had by court, which made a finding in favor of the appellees in the sum of Thirty-Five Thousand Dollars, ($35,000.00). * * * Judgment was entered for the appellees in accordance with the Special Findings of Facts and Conclusions of Law which read as follows:

"6. That the plaintiffs should have judgment against the defendant Fairwood Bluffs Conservancy District in the sum of $35,000.00 and costs of this action."

To be sure the judgment itself is not set forth, but once again we will construe the same to be before us sufficiently to save appellants from categorical dismissal of their appeal.[2]

We set forth in some detail appellees' contentions relative to the technical sufficiency of appellants' brief not to unduly lengthen this opinion but to make clear that an unnecessary burden is placed upon any appellate court when counsel pay little or no attention to the requisites of appellate procedure. Briefs such as here submitted by appellants are not conducive to expeditious or proper consideration and determination of the legal questions before a reviewing tribunal.[3] Notwith-

---

2. It should be noted that the liberalized rules of appellate procedure, particularly Appellate Rule 8.3 governing appeals after January 1, 1970, if here applied would preclude consideration of the merits of this appeal. The new rule requires a *verbatim* statement of the judgment appealed from.

3. Appellant's reply brief in its entirety is as follows:

"Comes now the Appellant and for reply to the Appellees' Answer Brief and in an attempted august and legal manner represents, alleges and says:

"That the Appellees' Answer Brief is dilatorious and in the judgment of this author is nefarious in nature and, therefore, denies all of the material allegations therein in substance.

"The issues pertaining to the Appellant's brief are cognizant only of the fact that they are orderly presented.

"As to the issues presented to the trial court, the appellant, under the theory of estoppel, contends that the issues involved are moot in nature and that the trial court had no jurisdiction.

"As to the procedural aspects of the case after my learned opposing counsel well counseled himself with the teachings of the Honorable F. Leroy Wiltrout, formerly Judge of the Appellate Court of Indiana, that the brief of Appellant's subscribes to his works most structurily and standardly.

Wiltrout Appellate Practice, Vol. 3

In fact it was derived under his philosophy. In the opinion of this author, I can only say that I feel inadequate and humbled.

"Compliance of the Rules of the Supreme Court of the State of Indiana were explicitly explained and you, gentlemanly, learned and wise, would in your wisdom employ this vehicle as a measure of efficiency. After all, law is justice.

"These Appellees entered into a contract, consideration shown, as adults, not under guardianship, no fraud involved, and sought to make their property enhanced, having made a poor bargain as the facts unfolded.

"Under the doctrine of *stare decisis* as outlined in Appellant's 'primitive brief,' it is prayed that the trial court be in all things reversed."

standing all the above it is considered that there are issues of substance sufficiently before us to require disposition upon the merits. Accordingly, appellees' motion to dismiss or in the alternative to affirm, though meritorious in many respects, is hereby overruled.

## RES JUDICATA

Appellants contend that the doctrine of *res judicata* precludes recovery by appellees upon their 1963 action because they, as parties plaintiff in the 1960 action, could have then raised the nuisance issue but did not do so. We must reject that contention.

It is well settled that a judgment does not preclude a second action unless the latter is founded upon the same or a substantially identical cause of action. *Stuck* v. *Town of Beech Grove* (1928), 201 Ind. 66, 163 N. E. 483; *Unger* v. *McManus* (1921), 75 Ind. App. 595, 130 N. E. 146.[4]

In determining whether causes of action are identical so as to warrant or require application of the rule of *res judicata*, the best test is whether identical evidence will support the issues tendered in both actions. *Burrell* v. *Jean* (1925), 196 Ind. 187, 146 N. E. 754; *Johnson* v. *Knudson-Mercer Co.* (1906), 167 Ind. 429, 79 N. E. 367. Compare *Evansville American Legion Home Assn.* v. *White* (1967), 141 Ind. App. 574, 230 N. E. 2d 632 (Transfer denied).

As stated in the *Stuck* case, *supra,* at page 71 of 201 Ind:

"* * * [I]f the evidence in the second suit is sufficient to authorize a recovery, but could not have produced a different result in the first suit, the first judgment is no bar to recovery in the second suit, although it is for the same cause of action * * *"

4. Compare *Royal Insurance Co.* v. *Stewart* (1921), 190 Ind. 444, 129 N. E. 853, which on its face appears contra to the *Stuck* and *Unger* cases, *supra.* In the *Royal Insurance Co.* case, however, the second action involved contrary and diametrically opposed allegations; whereas in the *Stuck* and *Unger* cases, as in the case presented for our determination, the allegations were and are not inconsistent.

See also *Indianapolis and Cincinnati R. R.* v. *Clark* (1863), 21 Ind. 150; *Kirkpatrick* v. *Stingley* (1850), 2 Ind. 269.

It is obvious that the evidence in the second action here involved, related only to whether the manner in which the defendant Conservancy District utilized the drainage ditch and the overflow, constituted a legal nuisance which damaged the Imels. That evidence could not, by any stretch of the imagination, tend to prove actionable fraud or misrepresentation by said defendant at the time the easement was originally executed. Such evidence would bear only upon the harm and resultant damages, if any, occasioned to the Imels by virtue of such fraud or misrepresentation, had such been proved;[5] or at most such evidence would bear upon an immaterial issue as to whether the defendant Conservancy District, through its duly authorized agent, Mr. Milling, made a representation as to future intention.[6]

This case is not unlike *Johnson* v. *Coal Bluff Mining Co.*, *supra*, wherein this Court held at page 412 of 93 Ind. App. that:

> "* * * [A] party may pursue his right of action upon an express contract, *and if he fails* to prove that there was a contract, he may in another suit pursue his right of action on the *quantum meruit*. [citations omitted]" (Emphasis supplied)

---

5. *City of North Vernon* v. *Voegler* (1885), 103 Ind. 314, 2 N. E. 821, is not contrary authority. In that case plaintiff sought to recover damages in a second action in addition to those actually litigated and already recovered in a prior action which damages were occasioned by the same act. See also *Johnson* v. *Coal Bluff Mining Co.* (1931), 93 Ind. App. 410, 178 N. E. 452. Compare *Indiana Pipe Line Co.* v. *Christensen* (1924), 195 Ind. 106, 143 N. E. 596. In *Olds* v. *Hitzemann* (1942), 220 Ind. 300, 42 N. E. 2d 35, wherein the Court held a complaint for fraud in execution of a deed barred by plaintiffs' failure to allege and prove such facts in defense of a prior action brought by the defendants for ejectment of plaintiffs from the same real estate. It was there held that the identical facts necessary to prove the fraud would have constituted a complete defense to the prior action and would therefore have produced a different result in the earlier action. To the same effect is *United Oil & Gas Co.* v. *Alberson* (1909), 43 Ind. App. 626, 88 N. E. 359.

6. It is well established that one is not entitled to rely upon representations of subjective future intention or probability insofar as such representation is later alleged to constitute grounds for an action in fraud. See 14 I.L.E., Fraud, § 17, and cases there cited.

It is, in fact, substantially similar to *Rarey* v. *Lee* (1893), 7 Ind. App. 518, 34 N. E. 749, wherein to paraphrase the Court at page 523 of 7 Ind. App., it was held that:

> It was not [the acquisition of the easement] which must be denominated as alone the cause, for, unless there was a flow of water in it, no injury could result to appellee[s]. Again, the appellant had a right to dig ditches upon [its easement], and as long as [it] confined the water flowing therein, to such [easement], [it] was not liable, but whenever [it] permitted it to escape and do injury to others, [it] became answerable therefor.

The applicability of this opinion is unaffected by a subsequent cause involving the same parties reported at 16 Ind. App. 121, 44 N. E. 318.

## PRIOR ADJUDICATION

In addition to appellants' unsuccessful *res judicata* argument it is contended that the material issues were previously adjudicated against appellees in the cause appealed from and that the trial court was without power to modify that entry of adjudication.

It is only in the argument portion of appellants' brief that the entry of March 4, 1964, is set forth. We will, however, dispose of this contention upon its merits.

Said entry, as hereinbefore set forth in the Statement of Facts, purported to be a "ruling" upon defendants-appellants' plea in bar. It was not a final judgment.[7] We, therefore, reject appellants' argument of prior adjudication.

Examination of Indiana case law, in this area, in an attempt to determine the precedent, if any, that binds us is less than satisfactory. In *Neyens* v. *Flesher* (1907), 39 Ind. App. 399, 401, 79 N. E. 1087, the Appellate Court considered the effect of the following entry:

---

7. We do not address ourselves to the judicial propriety of "ruling" upon a plea in bar without a demurrer to such plea, a motion for judgment upon the pleadings, a motion for summary judgment or a trial.

" 'It is therefore considered and adjudged by the court that the defendants, Joe Flesher and Jerry Flesher, do have and recover from the plaintiff, Leonard Neyens, their costs and charges in and about this cause laid out and expended.' "

The court held that such entry was not a final judgment from which an appeal would lie because it dealt only with settling the costs of the litigation which were held to be "mere incidents or necessary appendages" to the litigation. Seemingly contrary determinations have been made in other Indiana cases. See *Kelley* v. *Augsperger* (1908), 171 Ind. 155, 85 N. E. 1004, which expressly disapproved the *Neyens* decision. See also *State ex rel. Shenk* v. *Lung* (1907), 168 Ind. 553, 80 N. E. 541; *Peoples State Bank of Indianapolis* v. *Hall* (1925), 83 Ind. App. 385, 148 N. E. 486.

A careful reading of the last three cases above-cited, when compared with the particular language here used by the trial court and the circumstances and context in which such language was employed indicates a valid and controlling distinction between those three decisions and the case before us. Subsequent to its *Peoples State Bank* decision, and subsequent to the *Shenk* and *Kelley* cases, this court in *Cochran* v. *Sloan* (1934), 99 Ind. App. 408, 192 N. E. 772, treated a situation very analogous to that now before us. Its holding under similar circumstances was quoted with approval by our Supreme Court in *Williams* v. *Williams* (1939), 216 Ind. 110, 113, 23 N. E. 2d 428, as follows:

"* * * the appellant attempted to appeal from an order sustaining a motion to dismiss the cause. The judgment of the trial court followed a recital that the motion to dismiss was sustained with an exception and read (p. 409):

" 'It is therefore considered, ordered and adjudged by the court that the defendants recover of and from the plaintiff their costs herein laid out and expended.' "

In dismissing the appeal the court said (p. 410):

" 'It appears that no final disposition of the cause has been made in the court below. Although the record, as heretofore stated, does show that the court sustained the

defendants' motion to dismiss the cause, it wholly fails to show that any order dismissing the cause was entered or that any judgment of dismissal was rendered. * * *

" 'It makes no difference how decisive may seem the ruling of a trial court as indicative of what the final judgment will be, for until there is such a final judgment no appeal can be properly taken, as appeals lie from final judgments only, except as otherwise provided by statute.' "

Compare *Chambers* v. *Pennsylvania R. R.* (1950), 120 Ind. App. 342, 92 N. E. 2d 559.

Upon the facts before us we deem the *Cochran* and *Williams* decisions applicable and hold that where, as here, a ruling which purports to merely sustain a plea in bar and assess costs against plaintiff is not a final judgment. It is, in fact, not a judgment of any kind.[8]

Our holding in this regard is entirely consistent with the obvious intent of the trial court in making such ruling. Aside from the authorities hereinabove set forth, where the language used by a trial court in an order book entry is such as to permit conflicting inferences with regard to the effect of such language it is appropriate in a construction of the entry to inquire whether that entry was intended to terminate the case or some definite and severable portion thereof. See *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669, and *Fender* v. *Harold-Times, Inc.* (1969), 145 Ind. App. 575, 251 N. E. 2d 843, defining the term "final judgment".

The action taken by the Madison Superior Court subsequent to its March 4, 1964, entry strongly suggests that the court intended it only as a "ruling" upon defendants' plea in bar. The only issue which the March 4th entry could have disposed of concerned allegations sounding in recession and cancella-

8. There is authority for the assessment of costs against a party even though the cause has not reached judgment or other disposition. See Acts 1881 (Spec. Sess.), ch. 38, § 116, as found in Indiana Annotated Statutes § 2-1034 (Burns Repl. 1967), which allows assessment of costs against an unsuccessful defendant upon determination of a Plea in Abatement.

tion of the easement itself. That this was the intent of the court is shown by the fact that on April 9, 1964, the court specifically ordered plaintiffs to amend their complaint upon the theory that the exercise of that easement in a particular manner constituted a nuisance. On that latter date there was in effect a statute pertaining to the Superior Court of Madison County which read as follows:

> "Terms—The terms of said court shall commence on the first Monday of October, the first Monday of January, and the first Monday of April in each year, * * *." Acts 1895, ch. 26, § 6, as amended and as found in Ind. Anno. Stat. § 4-1306 (Burns 1946 Repl.)

Prior to abolishment of the varying terms of the courts of Indiana, by the 1967 Legislature, [Ind. Anno. Stat. § 4-6310 (Burns 1968 Repl.)], it was held that a judgment could be amended and changed in a matter of substance by judicial action of the court, only if taken during the term at which such judgment was rendered. After the expiration of the term, the judgment was no longer open to any amendment or correction which substantially affected or varied the judgment. *McIntosh* v. *Monroe et al.* (1953), 232 Ind. 60, 111 N. E. 2d 658; *Rooker* v. *Fidelity Trust Co., Trustee* (1931), 202 Ind. 641, 177 N. E. 454. Therefore, the fact that the court, on its own motion, after the start of the April Term, made the clarifying entry knowing full well that a *judgment* could not be substantially changed after the start of a new term, is virtually conclusive of the court's intention. For all of the reasons heretofore recited we reject appellants' "prior adjudication" argument.

## SOVEREIGN IMMUNITY

Appellant argues that it was "established for the singular purpose of providing surface water and sanitary drainage under Burns' 27-1510 subsection (3) and was thus acting in its governmental capacity, West's Indiana Law Encyclopedia, Vol. 21, *Municipal Corp.*, Sec. 401, and was thus immune

from liability. The Conservancy District received no profit for its services and was thus not acting in a proprietary function."

Our Supreme Court, in *Martin* v. *Ben Davis Conservancy District* (1958), 238 Ind. 502, 153 N. E. 2d 125, decided that conservancy districts are not municipal corporations, at least insofar as Indiana constitutional debt limitation is concerned, even though such conservancy districts may be granted many characteristics and attributes of municipal corporations by the legislature.[9]

If distinction be made between the character of a conservancy district for purpose of avoiding the constitutional prohibition hereinabove mentioned as opposed to its character relative to liability of said district to civil suit, such distinction, if any, is unavailing to appellants here because a municipal corporation is liable in a civil action for erecting and maintaining a nuisance the same as a natural person. *City of Valparaiso* v. *Moffitt* (1894), 12 Ind. App. 250, 39 N. E. 909; *City of New Albany* v. *Slider* (1899), 21 Ind. App. 392, 52 N. E. 626; 10 Ind. L.J. 331 (1935). In the *City of New Albany* v. *Slider, supra,* the rule was stated as follows at pp. 393-394:

> "* * * The rule seems to be well recognized that a municipal corporation is liable for torts, the same as an individual, in certain classes of cases, among which are included nuisances. * * * 'A municipal corporation has no more right to maintain a nuisance than an individual would have, and for a nuisance maintained upon its property, the same liability attaches against a city, as to an individual.' * * *"

APPELLANTS' AMENDED MOTION FOR NEW TRIAL

The judgment of the Henry Circuit Court was rendered on May 10, 1967. On June 5, 1967, appellants filed their motion

9. Boards of directors of conservancy districts have broad governmental and proprietary powers and functions as set forth in Acts 1957, ch. 308, § 61, as amended and as found in Ind. Anno. Stat. § 27-1561 (Burns' 1969 Supp.).

for a new trial wherein the previously discussed points were assigned as error. On August 21, 1967, the appellants filed an amended motion for new trial urging additional grounds for a new trial. We do not decide such additional grounds because an amended motion for new trial filed more than thirty days after the verdict or decision presents nothing for consideration on appeal. *Keplinger* v. *Ward* (1946), 116 Ind. App. 517, 64 N. E. 2d 307.

The judgment of the trial court is affirmed and the costs hereof are assessed against appellant.

Lowdermilk, C.J., Carson and Cooper, JJ., concur.

NOTE.—Reported in 255 N. E. 2d 674.